UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

A.B.A. FIRE EQUIPMENT, INC.,[1]       Case No. 11-35796-AJC
A-1 FIRE EQUIPMENT, CORP.,[2]      Case No. 11-35798-AJC
                            Chapter 11
        Debtors.            Jointly Administered

_____/

**DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 542
AND 552 AND FED. R. BANKR. P. 4001, 6003 AND 9014 FOR AN ORDER
(I) AUTHORIZING USE OF CASH COLLATERAL; (II) COMPELLING TURNOVER
OF ESTATE PROPERTY; AND (III) GRANTING ADEQUATE PROTECTION**
**(Emergency Hearing Requested)**

### Basis for Requested Emergency Hearing

The Debtors respectfully request that the Court conduct a hearing on this Motion within two business days of the Petition Date (as defined herein), consistent with Local Rule 9013-1(F). The Debtors face an acute liquidity problem that necessitated the commencement of these chapter 11 cases. It is therefore critical that, pending a final hearing on this Motion, the Debtors obtain immediate approval to use Cash Collateral (as defined herein), on an interim basis. Absent the ability to use Cash Collateral, the Debtors' operations will come to a halt, the value of the Debtors' assets will dramatically decline and creditors and parties in interest will be severely prejudiced. In contrast, approval of the use of Cash Collateral on an interim basis will preserve the value of the Debtors' assets and enable the Debtors to continue their operations and allow for an orderly sale thereof. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1 (B), which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

A.B.A. Fire Equipment, Inc. and A-1 Fire Equipment, Corp. (each a "***Debtor***" and collectively, the "***Debtors***"), by and through its undersigned counsel, move this Court on an *emergency* basis for the entry of an Interim Order in the form attached hereto as <u>Exhibit A</u>

---

[1] The Debtor's current mailing address is 3619 NW 2 Ave, Miami, FL 33127. The Debtor's EIN is 59-1596625.
[2] The Debtor's current mailing address is 3619 NW 2 Ave, Miami, FL 33127. The Debtor's EIN is 59-1590636.

(i) authorizing the Debtors to utilize cash collateral, (ii) compelling the turnover of estate property, (iii) granting adequate protection to the Debtors' prepetition secured lender, and (iv) scheduling a final hearing, pursuant to 11 U.S.C. §§ 361, 362, 363, 542 and 552, Fed. R. Bankr.P. 4001(b) and (d), 6003 and 9014, and Local Rules 4001-2, 9013-1(F) and (G) and 9075-1.  In support of this Motion (the "**Motion**"), the Debtors respectfully state as follows:

## I.    <u>JURISDICTION</u>

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this Motion is proper under 28 U.S.C. § 1408 and 1409.

2.      The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105 and 361, 362, 363(c)(2), 542 and 552 of 11 U.S.C. § 101 *et seq.* (the "***Bankruptcy Code***") and Rules 4001(b) and (d), 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Local Rules 4001-2 and 9013-1(F) and (G).

## II.    <u>BACKGROUND</u>

3.      On September 19, 2011 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to manage and operate their business as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed.

5.      The Debtors are Florida corporations that own and operate a closely-held business in the fire protection and electric services industry.  The Debtors have been doing business throughout the state of Florida since the mid-1970's, providing a myriad of fire protection-related products and services to their customers including the following: (i) distribution and

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

installation of fire alarm systems; (ii) 24/7 monitoring and all necessary inspection and service for all major brands of fire alarm systems; (ii) inspection and service of automatic fire suppression systems and fire extinguishers; (iii) inspection and service of fire sprinkler systems and emergency generators; (iv) distribution, installation and service of all major brands of emergency & exit lights and smoke/duct detectors; and (v) fire alarm runner services, as required by existing Miami-Dade County municipal code requirements. In addition, the Debtors provide fully-licensed electrical contracting services, available 24 hours a day, 7 days a week.

6.      The Debtors are closely-held corporations, whose officers and directors are Earl Spiegel ("*Speigel*"), Howard Pearson ("*Pearson*"), Randy Meland ("*Meland*") and Everett David Price, III ("*Price,*" and collectively with Spiegel, Pearson and Meland, the "*Officers*"). All of the issued and outstanding shares of the Debtors are owned by the Officers and three passive Canadian investors (the "*Passive Investors*").

7.      The Debtors primary offices and operations are located at 3619 NW 2 Ave, Miami, FL 33127 and 3634 NW 2 Ave, Miami, FL 33127, which properties are owned by Spearland Holdings, Inc. ("*Spearland*") and RHE Holdings, LLC ("*RHE*"), respectively, and leased to the Debtors pursuant to certain lease agreements (the "*Lease Agreements*"). Both Spearland and RHE are wholly-owned by Spiegel and Pearson, and have no independent business operations or assets other than the real property owned by each entity.

### III.    SUMMARY OF RELIEF REQUESTED
### (In Accordance With the Court's Guidelines (CG-7))

8.      Pursuant to Bankruptcy Rule 4001(b)(1)(B), the Debtors seek entry of the proposed Interim Order in the form attached hereto as Exhibit A, as well as the Final Order, authorizing the Debtors to:

- Use Cash Collateral (as defined below) pursuant to section 363(c) of the Bankruptcy Code in accordance with the budget attached hereto as <u>Exhibit B</u> (the "*Budget*"), which use shall include a professional fee carve-out as detailed below;

- Compel JPMorgan Chase Bank, N.A. ("*Chase*") to turnover any cash or other property of the Debtors' estate received by Chase on or after the Petition Date; and

- Grant to Chase various forms of adequate protection liens.

9.    In addition, the Debtors request that the Court schedule interim emergency and final hearings to consider the Motion.

## IV.    PREPETITION SECURED INDEBTEDNESS

10.    A.B.A. Fire Equipment, Inc. ("*ABA*"), as borrower, and A-1 Fire Equipment, Corp. ("*A-1*") and the Officers, as guarantors, are parties to a senior secured credit facility (the "*Prepetition Senior Secured Facility*") provided by Chase pursuant to that certain Business Loan Agreement, dated as of March 2, 2010 (the "*Loan Agreement*"), consisting of (a) a $900,000.00 senior credit facility (the "*Senior Secured Revolver*"), and (b) a $600,000.00 senior secured term loan (the "*Senior Secured Term Loan*") (collectively, with the First Lien Revolver, the "*Prepetition Senior Secured Loans*").  The Prepetition Senior Secured Loans are secured by first priority liens and security interests on substantially all of the Debtors' assets pursuant to a Commercial Security Agreement dated March 2, 2010 between Chase and ABA (the "*Security Agreement*").

11.    Spearland, as borrower, and the Debtors and Officers, as guarantors, are parties to a senior secured credit facility provided by Chase pursuant to that certain Business Loan Agreement, dated as of March 18, 2010 consisting of a $400,000.00 senior credit facility (the "*Spearland Senior Secured Facility*").  The Spearland Senior Secured Facility is secured by a

4

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

first priority mortgage on the real property owned by Spearland, and have historically been paid via lease payments made by ABA to Spearland each month.

12.    RHE, as borrower, and the Debtors and Officers, as guarantors, are parties to a senior secured credit facility provided by Chase pursuant to that certain Business Loan Agreement, dated as of March 18, 2010 consisting of an $800,000.00 senior credit facility (the "*RHE Senior Secured Facility*").  The RHE Senior Secured Facility is secured by a first priority mortgage on the real property owned by RHE, and have historically been paid via lease payments made by ABA to RHE each month.

13.    Pursuant to the Security Agreement, the Prepetition Senior Secured Facility, the Spearland Senior Secured Facility and the RHE Senior Secured Facility (the "*Prepetition Senior Secured Obligations*") are all cross-collateralized and cross-defaulted.

14.    In approximately April of 2011, the Debtors began to have difficulty staying current on their payments to Chase, as well as their payments to Spearland and RHE in connection with the Lease Agreement.  Accordingly, in June of 2011, Chase exercised its right, under the loan documents, to accelerate all of the Prepetition Senior Secured Obligations.  In addition, in accordance with the Security Agreement, Chase additionally exercised its right to begin collecting the Debtors' accounts receivable, and sent notices to many of the Debtors' customers, demanding that they send all future payments due and owing to the Debtors directly to Chase.

15.    On or about July 28, 2011, Chase commenced an action in the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "*Circuit Court*") against the Debtors, Spearland, RHE and the Officers seeking to foreclose on the Prepetition Senior Secured Obligations and/or collect on the guarantees in support thereof.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

16.     As of the Petition Date, the Debtors were indebted to Chase as follows: (i) in the approximate amount of $1,352,478.86 on account of the Prepetition Senior Secured Facility; (ii) in the approximate amount of $390,186.99 on account of their guarantee of the Spearland Senior Secured Facility; and (iii) in the approximate amount of $781,144.59 on account of their guarantee of the RHE Senior Secured Facility.

17.     In addition, the Debtors have been informed that the Passive Investors assert a security interest in all of the Debtors' assets pursuant to certain UCC-1 financing statements filed in connection with their infusion of funds into the Debtors' business.  The Debtors, however, dispute that the Passive Investors possess a lien on any of the Debtors' assets.

## V.     RELIEF REQUESTED

### A.     The Debtors' Need for Use of Cash Collateral

18.     Pursuant to the Prepetition Senior Secured Obligations, Chase has a first priority, perfected lien on all of the Debtors' cash generated from the operation, sale, disposition or other realization of any assets or property of the Debtors, wherever located, which constitutes cash collateral as defined in section 363 of the Bankruptcy Code (the "*Cash Collateral*").   As such, absent the relief requested herein, the Debtors will not have use of the cash necessary to operate their business and pay their employees.  It is therefore critical that, pending a final hearing on this Motion, the Debtors obtain immediate approval to use Cash Collateral, on an interim basis. Indeed, the success of these chapter 11 cases and the stabilization of the Debtors' operations and business at the outset thereof depend upon the Debtors' ability to continue to fund the operation of their business and permit them to meet payroll and other operating expenses, as well as the Debtors' ability to preserve the going concern value of their business.

19.     Absent the ability to use Cash Collateral, the Debtors' operations will come to a halt, the value of the Debtors' assets will dramatically decline and creditors and parties in interest will be severely prejudiced.  In contrast, approval of the use of Cash Collateral on an interim basis, will preserve the value of the Debtors' assets and enable the Debtors to continue their operations and allow for an orderly sale thereof.

20.     In view of the foregoing, the relief sought herein in immediate, necessary and essential in order for the Debtors to continue to meet their financial obligations to their employees, vendors and other creditors, and to maintain their operations and property so as to maximize the value of their estates.  For these same reasons, the relief sought herein is in the best interests of the Debtors and their estates.

21.     Specifically, the Debtors seek to use Cash Collateral for those purposes and in the amounts set forth in the budget which is attached hereto as Exhibit B (the "*Budget*").[3]

22.     The Debtors additionally request that (i) unpaid professional fees and expenses incurred by the Debtors pursuant to Section 330 of the Bankruptcy Code through and including the Termination Date (as will be defined in the Final Order granting this Motion), in an aggregate amount not to exceed the amount of reasonable fees awarded by the Court (and in the case of the Debtor's counsel, Meland Russin & Budwick, P.A.) ("*Debtors' Professionals' Carveout*"), and (ii) fees payable to the Clerk of the Court or United States Trustee pursuant to 28 U.S.C. § 1930 in this bankruptcy case (the "*Trustee Carveout*," and together with the

---

[3]  The Debtors request that they be allowed variances with any line item set forth in the Budget, provided that such variances shall not exceed 5%.  Further, the Debtors request that they be allowed an overall variance of ten percent (10%) with respect to the total budgeted expenses for that month in the Budget (collectively, the "*Allowed Variance*").  Finally, in the event that an expense arises which is not within any of the approved line items in the Budget, or in the event that the Debtors are required to exceed the Allowed Variance, the Debtors shall request approval from Chase and Chase shall have three (3) business days within which to provide consent or object.  In the event that Chase does not consent, the Debtors shall file a motion with the Court seeking amendment of the Budget and approval of the additional expense.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

Debtors' Professionals' Carveout, the "*Carveout*") shall be paid out of the Cash Collateral, and such amounts may be included in the approved Budget.

23.    In the event there is a Creditors' Committee appointed in this bankruptcy case, such Creditors' Committee shall negotiate any professional fees' carveout with Chase directly, as such fees are not included in the Debtors' Professionals' Carveout.

24.    Nothing contained in any Order granting this Motion shall be deemed or construed to waive, reduce or otherwise prejudice the rights of (a) Chase or any other party in interest to object to the allowance of compensation for services rendered by, or reimbursement for expenses incurred by, any professional person retained by the Debtors or the Creditors' Committee (if appointed) in this Bankruptcy Case or (b) any such professional person to apply to the Bankruptcy Court for allowance of such compensation or reimbursement in such amounts as such professional person may request; provided, however, there is no restriction on the ability of the Debtors to make payments to estate professionals to the extent permitted by both an approved budget and an appropriate order of the Bankruptcy Court, and such permitted payments shall not be subject to any claim or interest of Chase to the extent allowed pursuant to Section 330 of the Bankruptcy Code.

**B.  Turnover of Estate Property**

25.    As noted above, prior to the Petition Date, Chase exercised its right to collect the Debtors' accounts receivable and send notices to many of the Debtors' vendors and customers, demanding that they send all future payments due and owing to the Debtors directly to Chase. As of the Petition Date, all monies owed to the Debtors on account of their outstanding receivables as of the Petition Date are property of the Debtors' estates pursuant to section 542 of the Bankruptcy Code.   As such, any such monies received by Chase from and after the Petition

Date are property of the Debtors' estates and the Debtors request that the Court include, in any Order granting this Motion, including the Interim Order, language requiring Chase to (i) immediately turnover to the Debtors any and all monies received by Chase from and after the Petition Date on account of the Debtors' accounts receivable or any other property of the Debtors' estate; and (ii) send a letter to all parties to whom Chase previously sent a letter demanding collection of accounts stating that all remittances from and after the Petition Date should now be made to the Debtors.

## VI.    BASES FOR RELIEF REQUESTED

### A. Use of Cash Collateral pursuant to Section 363 of the Bankruptcy Code

26.    Section 363 of the Bankruptcy Code governs a debtor's ability to use, sell or lease property of the estate. Section 363(c)(2) of the Bankruptcy Code restricts a debtor's ability to use cash collateral. That section provides, in pertinent part:

> The trustee [or debtor in possession] may not use, sell or lease cash collateral under paragraph (1) of this subsection unless -
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

27.    Section 363(a) of the Bankruptcy Code defines "cash collateral" as including cash and cash equivalents "whenever acquired," in which the estate and any entity other than the estate have an interest, and the "proceeds, products, offspring, rents or profits of property subject to a security interest as provided in section 552(b) of this title whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a).   Under Bankruptcy Code sections 363(c)(2) and (e), the Court may authorize the Debtors to use Cash Collateral as long as their secured creditors consent to such use, or if such secured creditors are "adequately protected."

28.    Chase has consented to the use of Cash Collateral, provided that Chase receives adequate protection, and provided such use is: (i) consistent with the purposes set forth in the Interim Order, (ii) in accordance with the Budget, and (iii) not prohibited by the Interim Order.

29.    As adequate protection to Chase for any diminution in value of the Prepetition Collateral resulting from the Debtors' use of Cash Collateral after the Petition Date, the Debtors propose to grant to Chase, *nunc pro tunc* to the Petition Date, dollar for dollar to the extent used, sold, leased, extinguished or otherwise impaired, or to the extent heretofore granted but rendered ineffective pursuant to §552 of the Bankruptcy Code, a first priority lien against and security interest in all presently owned and hereafter acquired property which is not subject to a prior perfected and enforceable pre-petition lien, but excluding all proceeds of property recovered or transfers avoided by or on behalf of the Debtors, their estates or any subsequent chapter 11 or chapter 7 trustee under Sections 544 through 550, inclusive, of the Bankruptcy Code (collectively, "**Postpetition Collateral**"). This lien (the "**Adequate Protection Lien**") shall have priority over all presently existing and hereafter arising liens in the Postpetition Collateral, and the Adequate Protection Lien shall be binding on the Debtors, any successor in interest to the Debtors (including, without limitation, any trustee appointed in this case and in any superseding case under Chapter 7 of the Bankruptcy Code) and any and all creditors or other interest holders who have extended or may hereafter extend credit to the Debtors or their estates. Further, the Debtors shall make adequate protection payments to Chase of $2,000.00 a month, as set forth in the Budget.

30.    The liens and security interests granted to Chase herein shall be valid and perfected without the need for the execution or filing of any further document or instrument otherwise required to be executed or filed under non-bankruptcy law. Notwithstanding that no

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

documents need be executed or filed to create or perfect the liens and security interests granted hereunder, the Debtors shall execute and deliver to Chase such further documents as they may reasonably request to evidence and give notice of the security interest granted hereunder, including without limitation UCC-1 Financing Statements or UCC-3 Statements of Change. If Chase, in its sole discretion, shall choose to file such financing statements, security agreements, or other instruments, or otherwise confirm perfection of such security interest and liens, all such financing statements or similar instruments shall be deemed to have been filed or recorded as of the Petition Date, and relief from the automatic stay provisions of 11 U.S.C. §362(a) for the purpose of filing said instruments will not be contested by the Debtors.

31.    The Debtors submit that the Adequate Protection Liens are necessary to provide some measure of adequate protection to Chase. Moreover, assuming the Court grants such adequate protection to Chase, Chase has consented to the use of Cash Collateral. Accordingly, pursuant to sections 362(c)(2) and (e) of the Bankruptcy Code, the Debtors submit that use of Cash Collateral is proper under the circumstances, and they request authorization to use Cash Collateral based on the grounds set forth herein.

## VII.    NOTICE

32.    No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been given by overnight mail, hand delivery or facsimile to the following: (i) the Office of the United States Trustee, (ii) the Office of the United States Attorney for the Southern District of Florida, (iv) the Internal Revenue Service, (v) those entities or individuals included on each of the Debtors' twenty largest unsecured creditors, and (vi) counsel to Chase. In light of the nature of the relief requested, the Debtors submit, and

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

request that the Court find, that such notice is appropriate and that no further notice need be given.

## VIII.   REQUEST FOR FINAL HEARING

33.    Pursuant to Bankruptcy Rule 4001(c)(2), the Debtors respectfully request that the Court set a date for a Final Hearing that is no later than fifteen (15) days following the Petition Date.  The Debtors respectfully request that they be authorized to provide notice of the Final Hearing as soon as practicable after entry of an order approving this Motion, by serving copies of such notice via fax or overnight delivery or other express mail to (a) the parties served with a copy of the Interim Order; (b) an other party that has filed a request for notices with the Court; and (c) counsel for any statutory committee, if one is appointed.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that this Court (i) enter the Interim Order, substantially in the form attached hereto as Exhibit A, authorizing the relief requested herein; (ii) approve the form and manner of notice of the Final Hearing on this Motion, as set forth herein; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: September 20, 2011

 s/ Peter D. Russin
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Proposed Counsel for Debtors in Possesion*

EXHIBIT A

PROPOSED

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

A.B.A. FIRE EQUIPMENT, INC.,[1]          Case No. 11-35796-AJC
A-1 FIRE EQUIPMENT, CORP.,[2]            Case No. 11-35798-AJC
                                        Chapter 11
                    Debtors.            Jointly Administered
_____/

**INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION
PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 542 AND 552 AND
FED. R. BANKR. P. 4001, 6003 AND 9014 FOR AN ORDER (I) AUTHORIZING
USE OF CASH COLLATERAL; (III) COMPELLING TURNOVER OF ESTATE
PROPERTY; AND (IV) GRANTING ADEQUATE PROTECTION**

**THIS MATTER** came before the court on September _____, 2011 at ____ ___.m., upon

the Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 361, 362, 363, 542 and 552 and Fed.

_____

[1] The Debtor's current mailing address is 3619 NW 2 Ave, Miami, FL 33127.  The Debtor's EIN is 59-1596625.
[2] The Debtor's current mailing address is 3619 NW 2 Ave, Miami, FL 33127.  The Debtor's EIN is 59-1590636.

R. Bankr. P. 4001, 6003, and 9014, for an Order (i) Authorizing Use of Cash Collateral;[3] (ii) Compelling Turnover of Estate Property; and (iii) Granting Adequate Protection [ECF No. _____] (the "*Motion*").   The Court having reviewed the Motion and having heard the statements of counsel in support of the relief requested in the Motion at the hearing before the Court (the "*Hearing*"); and the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before this Court pursuant to 28 U.S.C. § 1408; (c) this matter is core pursuant to 28 U.S.C. § 157(b)(2); (d) notice of the Motion and the Hearing was sufficient under the circumstances; and (e) the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, it is accordingly:

       **ORDERED AND ADJUDGED** as follows**:**

    1.      The Motion is **GRANTED** as set forth herein.

    2.      Use of Cash Collateral.   The Debtors are authorized, through and including _____, 2011 (the "*Interim Period*"), to use cash collateral as defined in Section 363(a) of the Bankruptcy Code to pay for the operating expenses and costs of administration incurred by the Debtors in accordance with the budget attached hereto as Exhibit A (the "*Budget*"), provided that the Debtors timely tender the required monthly payments to Chase as set forth herein.   The Debtors shall not exceed any line item on the Budget by an amount exceeding five percent (5%) of each such line item; *provided*, *however*, that the Debtors may make payments up to ten percent (10%) in excess of the total budgeted expenses for that month in the Budget so long as actual disbursements do not exceed one hundred and ten percent (110%) of the budgeted total expenses for such month of the Budget (collectively, the "*Allowed Variance*").   In the event that

---

[3] All capitalized terms utilized but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

an expense arises which is not within any of the approved line items in the Budget, or the Debtors anticipate that any line item will need to be exceeded by more than the Allowed Variance, the Debtors shall request approval from Chase and Chase shall have three (3) business days within which to provide consent or object.  In the event that Chase does not consent, the Debtors shall file a motion with the Court seeking amendment of the Budget and approval of the additional expense.  Notwithstanding anything to the Contrary in this Order, no Debtors' Professionals' Carveout payments (including but not limited to those for the Debtors' attorneys) shall be made without prior notice, hearing, and approval of this Court.  Further, in the event there is a Creditors' Committee appointed in this bankruptcy case, such Creditors' Committee shall negotiate any Professional Fees' Carveout with Chase directly, as such fees are not included in the Debtors' Professionals' Carveout.

3. <u>Turnover of Estate Property</u>:  To the extent that any monies are received by Chase from and after the Petition Date from the Debtors' vendors or customers, or otherwise on account of the Debtors' accounts receivable or any other property of the Debtors' estates, such funds constitute property of the Debtors' estates pursuant to section 542 of the Bankruptcy Code and Chase shall be required to immediately turnover any and all such funds to the Debtors.   In addition, within three (3) business days of entry of this Order, Chase shall send a letter to all parties to whom Chase previously sent a letter demanding collection of accounts stating that all remittances from and after the Petition Date should now be made to the Debtors.  Failure to do either of the foregoing shall constitute a willful violation of the automatic stay pursuant to section 362(a) of the Bankruptcy Code and shall be subject to appropriate sanctions.

4. <u>Replacement Liens as Adequate Protection to Secured Creditor Chase</u>: Notwithstanding the provisions of Section 552(a) of the Bankruptcy Code, and in addition to the

security interests preserved by Section 552(b) of the Bankruptcy Code, the Debtors grant, in favor of Chase and as security for all indebtedness that is owed by the Debtors to Chase, under its loan documentation, but only to the extent that Chase's cash collateral is used by the Debtor, a first priority post-petition security interest and lien in, to and against all of the Debtors' assets, to the same priority, validity and extent that Chase held a properly perfected pre-petition security interest in such assets, which are or have been acquired, generated or received by the Debtors subsequent to the Petition Date (the "***Postpetition Collateral***").   Under no circumstance shall Chase have a lien on any of the Debtors' assets upon which it did not have a right to pre-petition. The security interests granted in this Order are deemed perfected without the necessity for filing or execution of documents which might otherwise be required under non-bankruptcy law for the perfection of said security interests. The Postpetition Collateral excludes all proceeds of property recovered or transfers avoided by or on behalf of the Debtors, its estate or any subsequently appointed trustee, pursuant to sections 544 through 550, inclusive, of the Bankruptcy Code.

5.      For the Interim Period, Chase is deemed to be adequately protected by the granting of a replacement lien as set forth in this Order, in addition to any additional security it may have with respect to the indebtedness owed to it; provided, however, that, to the extent that the foregoing is not sufficient to adequately protect Chase, it is entitled to a priority claim for such shortfall in accordance with Section 507(b).

6.      Notwithstanding the above or anything to the contrary on this Order, the finding that Chase's interests are adequately protected for the Interim Period is without prejudice to the rights of Chase to seek modification of the adequate protection provided in this Order (and without prejudice to the rights of the Debtors or any party in interest to contest any such modification), without prejudice to any other matter pertaining to the claims and liens of Chase.

4

7.    <u>No Novation</u>: This Order shall not cause a novation of any of Chase's secured documentation.

8.    <u>Creditor Not Deemed Owner or Operator</u>: Solely by agreeing to the use of cash collateral by the Debtors, Chase shall not be deemed to have assumed any liability to any third person, and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or of its assets.

9.    <u>Adequate Protection Payments</u>: As additional adequate protection, the Debtors shall make adequate protection payments to Chase in the amount of $2,000.00 per month..

10.   <u>Non-Waiver of Rights and Remedies</u>: This Order is not intended to and shall not prejudice, alter, affect or waive any rights and/or remedies of the Debtors or Chase (with respect to liens, claims, value determinations, and all other matters) under the Bankruptcy Code or applicable non-bankruptcy law (including, but not limited to, all matters pertaining to cash and other collateral) and does not bind any subsequently appointed trustee or committee.

11.   <u>Duration</u>: The provisions of this Order shall remain in effect until the earlier of _____, 2011, entry of any order dismissing this case, the granting of stay relief in favor of Chase, or by consent and agreement of Chase, or the entry of any order by the Court extending the use of cash collateral.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

12.    <u>Further Hearing</u>: This Court shall hold a final hearing on the Debtors' use of cash collateral on _____ ____, 2011, at __:__ __.m. at the United States Bankruptcy Courthouse, Claude Pepper Federal Building, 51 SW First Ave, Courtroom _____, Miami, FL 33130.

###

**Submitted By:**
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
Proposed Counsel for Debtors in Possession
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone:    (305) 358-6363
Telefax:      (305) 358-1221

**Copies Furnished To:**
Peter D. Russin, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.

EXHIBIT "B"

| | Sep-11 | Oct-11 | Nov-11 | Dec-11 | Jan-12 | Feb-12 |
|---|---|---|---|---|---|---|
| Cash on Hand (beginning of month) | 20,028 | 52,548 | 62,193 | 76,713 | -34,767 | -12,747 |
| Projected receipts | 530,000 | 530,000 | 530,000 | 530,000 | 530,000 | 530,000 |
| Total Cash Available (before expenses) | 550,028 | 582,548 | 592,193 | 606,713 | 495,233 | 517,253 |
| **Expenses** | | | | | | |
| Materials | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 |
| Payroll Cost (net checks, admin fee's, tax, etc.) | 280,000 | 280,000 | 280,000 | 420,000 | 280,000 | 280,000 |
| Office Equip Leases | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 |
| Repairs & maintenance | 2,030 | 2,030 | 2,030 | 2,030 | 2,030 | 2,030 |
| Vehicle Expense | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Accounting & legal (other) | 900 | 900 | 900 | 900 | 900 | 900 |
| Legal for petition | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Telephone | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Utilities | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 |
| Insurance | 43,500 | 43,500 | 43,500 | 29,500 | 29,500 | 41,700 |
| Taxes (real estate, Sales, etc.) | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Interest | 500 | 500 | 500 | 500 | 500 | 500 |
| Chase Adequate Protection | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| UST Fees | | 4,875 | | | 6,500 | |
| Total Expenses | 497,480 | 520,355 | 515,480 | 641,480 | 507,980 | 513,680 |
| Closing Balance | 52,548 | 62,193 | 76,713 | -34,767 | -12,747 | 3,573 |