

ORDERED in the Southern District of Florida on June 29, 2012.

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | Case No.: 11-35796-BKC-AJC |
| | Case No.: 11-35798-BKC-AJC |
| A.B.A. FIRE EQUIPMENT, INC., | Chapter 11 Proceeding |
| A-1 FIRE EQUIPMENT, CORP. | Jointly Administered |
| Debtors. | |
| _____/ | |

**ORDER DENYING DEBTORS' MOTION TO SURCHARGE COLLATERAL
PURSUANT TO 11 U.S.C. § 506(c) (ECF#143)**

**THIS MATTER** came before the Court in Miami, Florida on April 18, 2012, at 2:00 p.m., pursuant to the Debtors' Motion for Order (I) Determining Rights to Proceeds of Sale, (II) Providing Direction to Escrow Agent Regarding Distribution Thereof, and (III) to Surcharge Collateral Pursuant to 11 U.S.C. § 506(c); and Objection, Pursuant to the Sale Order, to the Distribution of Sale Proceeds to JP Morgan Chase, N.A. Pending Resolution of the Motion (the "Motion") (ECF#143), and the Response of Secured Creditor JP Morgan Chase Bank, N.A. (the "Response") (ECF#170). The Court having considered the Motion and the Response, heard

1

argument of counsel, and being otherwise fully advised in the premises, denies the Motion for the reasons stated herein.

Section 506(c) provides in relevant part that "[t]he trustee may recover from property securing an allowed claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . . ." As a general rule, the costs of administering the debtor's estate are not charged against a secured creditor's collateral. *In re Toy King Distributors, Inc.*, 256 B.R. 1, 193 (Bankr. M.D. Fla. 2000) (citing *Precision Steel Shearing, Inc. v. Fremont Financial Corp. (In re Visual Industries, Inc.),* 57 F.3d 321, 324 (3d Cir.1995)). "Surcharging collateral subject to a security interest is the exception and not the rule for recovering costs and expenses associated with the preservation or disposition of estate property. Ordinarily, the costs and expenses detailed in Section 506(c) are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral." *In re Smith International Enterprises, Inc.,* 325 B.R. 450, 453 (Bankr. M.D. Fla.2005). Generally, administrative expenses in bankruptcy cases are charged to the estate and not to the assets or equity belonging to secured creditors. *In re Hughes*, 2006 WL 1308677, *2 (Bankr. S.D. Fla. March 31, 2006) (citing *In re Trim–X, Inc.,* 695 F.2d 296, 301 (7th Cir. 1982)). "We allow payment of administrative expenses from the proceeds of secured collateral when incurred primarily for the benefit of the secured creditor or when the secured creditor caused or consented to the expense." *In re Compton Impressions, Ltd.,* 217 F.3d 1260 (9th Cir. 2000) (citing *In re Cascade Hydraulics & Utility Serv., Inc.,* 815 F.2d at 548).

To surcharge collateral, a debtor must demonstrate that the secured creditor expressly or impliedly consented to the expense or, absent such consent, that (a) the expenditure was necessary; (b) the amount expended was reasonable; and (c) the secured creditor benefited from

2

the expenditure. *In re Spa at Sunset Isles Condominium Assoc., Inc.,* 454 B.R. 898, 906 (Bankr. S.D. Fla. 2011). In other words, surcharge may be employed to obtain reimbursement of expenses paid from unencumbered assets, if the secured creditor demonstrably benefited by such expenses. *In re Cascade Hydraulics and Utility Service, Inc.,* 815 F.2d 546, 548 (9th Cir.1987) (party seeking the surcharge must prove that its expenses were reasonable, necessary and provided a quantifiable benefit to the secured creditor). The Debtor must, at a minimum, demonstrate through competent evidence that the expenses at issue actually increased the value that the secured creditor realizes from its collateral. *In re Harbour East Development, Ltd.*, 2011 WL 6097063, at *4. The party seeking to surcharge must show a specific and quantifiable benefit to the secured creditor. *In re Toy King Distributors, Inc.*, 256 B.R. at 193.

Pursuant to 11 U.S.C. §363, the Court approved the sale of substantially all of the Debtors' assets on January 31, 2012 (ECF#130). In its Motion, the Debtors seek payment of $54,116.07 for January Payroll tax, $4,864.47 in January Workman's Comp, $144,406.00 in accrued payroll, $38,691.95 in Accrued payroll taxes, $21,441.13 in January sales tax, $53,099.00 in Misc Vendor payments, $7,500.00 for January SUTA, and $84,068.36 in unpaid attorneys' fees and costs (the Court has awarded $198,731.36 and $114,663.00 has been paid from the Debtors' bank accounts), for a total of $408,186.98, ECF #143 at 7. The sales price for substantially all of the Debtors' assets was $830,000.00, with JP Morgan Chase Bank, N.A. ("Chase") agreeing to a 10% carve-out for general unsecured creditors, so the sales proceeds in dispute are $747,000.00, ECF #130. Chase was owed on the Debtors' obligations against this collateral the total $1,375,747.55, Claim No. 22-1.

In their Motion, the Debtors maintain they are entitled to surcharge Chase's collateral for the $408,186.98 because the Debtors' operating post-petition permitted the sale of substantially

all of the Debtors' assets as a going-concern which resulted in a higher sale price. The Debtors also maintain that Chase would not have received more than 10%, or approximately $150,000.00, from the sale of the Debtors' receivables and other assets absent the bankruptcy.

In its Response, Chase argues that the sales price was based almost exclusively on receivables and that those receivables did not arise post-petition, and that the Debtors' sale of substantially all of its assets was on substantially the same terms and conditions that was available before the bankruptcy. Thus, Chase contends that the sums sought by the Debtors for a surcharge were not reasonable or necessary. Chase also contends that the sale and its price were driven by the Debtors' principals seeking to maintain employment with the purchaser, and not to maintain the value of the collateral and that Chase was responsible for negotiating the final sales price.

Paragraph 8 of the Debtors' Motion provides that: "Notably, the stalking horse bid presented in the Sales Procedures Motion was essentially the same bid, on substantially the same terms and conditions, as had been presented to and discussed with Chase as far back as August of 2011 (in discussions leading up to the filing of these Chapter 11 Cases). Chase agreed, even at that time, that the proposed chapter 11 filing and 363 sale was in the best interests of all parties and expressly gave its support to the filing and the proposed sale transaction." (footnote omitted).

The sale was almost all inventory and receivables, Deposition of Howard Pearson at p. 8, ll. 2-4; ECF #129 at p. 6, Exhibit "A" (allocating $755,886.35 to accounts receivable, $99,450.40 in inventory, and only $50,000.00 collectively to "fixed assets, intellectual property, and goodwill). The primary concern in the sale was providing jobs, not protecting Chase's collateral. Deposition of Earl Spiegel at p. 83, l. 20-p. 84, l.6. The Court also notes that the Debtors'

receivables pre-petition in September of 2011 were $1,256,701.54 and at the time of its sale in February 2012 were $1,287,158.81 ECF#64, 140.

The Court concludes that the elements necessary to support a surcharge are not present in this case. Chase did not expressly or implicitly consent to a surcharge. The sale was mainly to secure jobs, not to safeguard Chase's collateral or to maximize its sales price. The value of Chase's collateral was not increased due to the bankruptcy as the receivables, the primary asset purchased, did not increase significantly, if at all, after the Debtor's bankruptcy filing. The sums sought were accordingly not necessary or reasonable. While Chase may have benefitted from the sale of the receivables as a going-concern, the Debtors have been unable to quantify that benefit; and, Chase has already agreed to substantial carve-outs for general unsecured creditors and took other concessions to effectuate the sale. In addition, the Court has, by separate order, approved payment of certain attorneys' fees from the sale proceeds based on prior Court orders.

To maintain a surcharge, the Debtors must demonstrate a specific and quantifiable benefit to Chase. *See In re Toy King Distributors, Inc.* 256 B.R. at 193. The Debtors contend that Chase would have collected no more than $150,000.00, which is 10% of the Debtors' outstanding receivables of approximately $1,500,000. However, the Debtors' president was unable to support this estimate in his deposition. Deposition of Earl Spiegel at p. 68, l. 25- p. 77, l. 2. Deposition of Howard Pearson at p. 8, l.l. 13-22. No other evidence in this regard was presented to the Court. Accordingly, the Court concludes the Debtors have failed to carry their burden of proving any specific or quantifiable benefit to Chase. It is therefore

**ORDERED AND ADJUDGED** that the Motion, to the extent it seeks to surcharge the collateral of JP Morgan Chase Bank, N.A. pursuant to 11 U.S.C. § 506(c) is **DENIED.**

###

Submitted By:
G. Steven Fender, Esq.
250 S. Australian Avenue, Suite 700
West Palm Beach, FL 33401
T. (561) 838-4509
F. (561) 514-3409

**Attorney Fender is directed to mail a conformed copy of this order to all interested parties and to file a certificate of service with the clerk of the Bankruptcy Court.**

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Jeffrey S. Berlowitz    jberlowitz@siegfriedlaw.com, mcabrera@siegfriedlaw.com
- Lisa M. Castellano    lcastellano@becker-poliakoff.com, sherd@becker-poliakoff.com;tfritz@becker-poliakoff.com
- G Steven Fender    steven.fender@gmlaw.com, efileu1094@gmlaw.com;efileu1092@gmlaw.com
- Gerard M Kouri Jr.    gmkouripaecf@gmail.com, gmkouri@bellsouth.net
- Thomas R. Lehman    trl@lkllaw.com, jmh@lkllaw.com;esf@lkllaw.com;cag@lkllaw.com
- Henry A. Lopez-Aguiar    dreboso@hl-alaw.com
- Scott W Mahlman    courtmail@schuylaw.com
- Perry D. Monioudis    pmonioudis@bellsouth.net
- Arthur C. Neiwirth    aneiwirthcourt@qpwblaw.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Peter D. Russin    prussin@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
- Wayne M Singletary    courtmail@schuylaw.com
- Steven J. Solomon    steven.solomon@gray-robinson.com, lnegron@gray-robinson.com;marilyn.rivera@gray-robinson.com
- Steve D Tran    bkfiling@consuegralaw.com
- Jessica L Wasserstrom    jwasserstrom@melandrussin.com, ltannenbaum@melandrussin.com;;mrbnefs@yahoo.com

**Manual Notice List**

    BMW Financial Services NA, LLC
    c/o Ascension Capital Group
    POB 201347
    Arlington, TX 76006

    Andrew J Babnik

75 Valencia Ave 2 Fl
Coral Gables, FL 33134

Miami-Dade County Tax Collector
Miami-Dade County Bankruptcy Unit
c/o Alexis Gonzalez
140 West Flagler Street, Suite 1403
Miami, FL 33130